Alton J. BAILEY

v.

RYAN STEVEDORING CO., INC., (2) Rogers Terminal and Shipping Corp., (3) Louisiana Stevedores, Inc., (4) Ramsay, Scarlett and Co., Inc., (5) Baton Rouge Marine Contractors, Inc., and (6) Local 1830 and Local 1833, General Longshore Workers, International Longshoremen's Association, AFL–CIO.

Civ. A. No. 71–79.

United States District Court,
M. D. Louisiana.

Jan. 27, 1978.

James C. Lopez, Edward F. Glusman, Baton Rouge, La., for Rogers Terminal & Shipping Corp., Louisiana Stevedores, Inc., Ramsay Scarlett Company, Inc. and Baton Rouge Marine Contractors, Inc.

James A. George, Baton Rouge, La., for Local 1833, General Longshore Workers, International Longshoremen's Association, AFL–CIO.

Joseph W. Cole, Jr., Port Allen, La., for Local 1830, General Longshore Workers, International Longshoremen's Association, AFL–CIO.

Johnnie A. Jones, Baton Rouge, La., for plaintiff.

C. Paul Barker, Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, La., for Local 1830 and Local 1833, General Longshore Workers, International Longshoremen's Association, AFL–CIO.

George A. Mathews, Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge,

La., for Baton Rouge Marine Contractors, Inc. and Ryan Stevedoring Company, Inc.

E. GORDON WEST, District Judge:

The plaintiff, Alton J. Bailey, filed this civil rights action against several stevedoring companies and two local longshoremen's unions at the Port of Baton Rouge, Louisiana. On behalf of himself and "others similarly situated," the plaintiff sought injunctive relief, declaratory judgment, and back pay. The plaintiff further sought to have the all black union, Local No. 1830, General Longshore Workers, International Longshoremen's Association, AFL–CIO, merged with the all white union, Local No. 1833.

The District Court found that there was no employment discrimination on the part of any of the defendants, and particularly found that plaintiff had in no way been discriminated against by any of the defendants. This Court further concluded that the claims of the plaintiff were entirely individual in nature and denied the plaintiff the class action which he had attempted to bring under Rule 23 of the Federal Rules of Civil Procedure.

On appeal, the Fifth Circuit Court of Appeals affirmed the District Court in part and reversed in part. The Court of Appeals, agreeing with the Trial Court, found the plaintiff did not have a valid individual claim, and that he did not have the requisites to qualify him as a representative for a class action. But then the Appeals Court went on to conclude that while the hiring practice of defendants dividing and allotting jobs on a 50–50 basis between the members of the two unions, which unions each had approximately the same number of members, *did not* result in discriminatory hiring, nevertheless the 50–50 hiring practice represented a *possible future threat* of discrimination should the numerical membership of the two unions change, and then proceeded to remand the case to this Court with a mandate that a permanent injunction issue enjoining the continued operation of the two segregated local unions. In other words, the Court of Appeals agreed that the plaintiff had no meritorious individual claim, and that he could not represent anyone in this suit except himself, but still the mandate required judgment in his favor and against the defendants. Since this Court believes that the law, though it may have been unsettled at that time, has now been clarified by the United States Supreme Court, it feels compelled to deviate from the mandate issued by the Court of Appeals for the following reasons.

■ Under Rule 60(b) of the Federal Rules of Civil Procedure, the Court may relieve a party of a final judgment when:

"(5) . . . it is no longer equitable that the judgment should have prospective application; or (6) [for] any other reason justifying relief from the operation of the law."

With this in mind, the following issues are presented to this Court: (1) Does Rule 60(b) give this Court the power to change the judgment of the Appellate Court? (2) Does this Court need leave from the Court of Appeals to entertain the Rule 60(b) motion? (3) If this Court does have such power, do the Supreme Court cases hereinafter referred to warrant deviating from the mandate of the Court of Appeals?

This Court is aware of the trend in the law, as summarized by Professor J. W. Moore in 7 *Moore's Federal Practice* ¶ 60.-26(3) at page 325, that generally, Rule 60(b)(5), "does not authorize relief from a judgment on the ground that the law applied by the Court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding." But this Court feels that "this is not an inexorable rule, as indeed the Supreme Court has recognized." *Wright and Miller, Federal Practice and Procedure: Civil § 2864.* In *Polites v. U. S.*, 364 U.S. 426, 433, 81. S.Ct. 202, 206, 5 L.Ed.2d 173 (1960), the Court states that:

"We need not go so far here as to decide when an appeal has been abandoned or not taken because of a clearly applicable adverse rule of law, relief under Rule 60(b) is inflexibly to be withheld when there has later been a clear and authoritative change in governing law."

Following this approach, the First Circuit Court of Appeals in *Theriault v. Smith*, 523 F.2d 601 (CA 1–1975), changed a consent decree when a Supreme Court decision "represented a fundamental change in the legal predicates of the consent decree." The Court recognized this as "arguably the kind of situation in which relief should be available under Rule 60(b)(5)." The District Court in *Griffin v. State Board of Education*, 296 F.Supp. 1178 (E.D.Va.—1969), allowed reopening of a decree upholding the validity of a state tuition grant system where the "intervening and supervening edicts of the Supreme Court qualify under the Rule as a 'reason justifying relief from the operation of the judgment' under Rule 60(b)(6)." The Court went on to say, "This is a substantial change in the law and ended further viability of our decision. Now to continue its efficacy would be unjust to those initially and now affected by the order."

Further justification for the use of Rule 60(b) by this Court is evident in the words of the Court in *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538 (CA 2–1963), wherein it is stated that Rule 60(b) gives the Court a "grand reservoir of equitable power to do justice in a particular case  .   .   . ; the rule should be liberally construed when substantial justice will be served."

■ Therefore, it is the opinion of this Court that Rule 60(b) should be used in this case. The question now arises as to whether or not the District Court may apply the rule without leave from the Appellate Court.

Many Courts of Appeals have required appellate leave before the District Court may reopen a case which had been reviewed on appeal. However, the Supreme Court just recently ended this anachronism in *Standard Oil Co. of California v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). The Government won an antitrust action in the District Court and was affirmed by the Supreme Court. There arose allegations of misconduct on the part of Government counsel and the oil company sought to have the judgment set aside. In holding that leave of the Appellate Court was not necessary for the District Court to act, the Court said:

> "In our view, the arguments in favor of requiring appellate leave are unpersuasive. Like the original district court judgment, the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events. Hence the district judge is not flouting the mandate by acting on the motion." 97 S.Ct. at page 32.

With such authority, this Court feels no hesitation in applying Rule 60(b) on its own, without leave of court. Thus all that remains is to decide whether or not the Supreme Court case law compels deviation from the terms of the mandate.

The defendants in this case have submitted briefs wherein they urge this Court to consider three recent Supreme Court cases, all decided since the appellate hearing on this case. These cases are *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); and *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). This Court, however, considers only the latter, *East Texas Motor Freight*, to be dispositive of the issues before it. That suit was brought by Mexican Americans claiming racial and ethnic discrimination due to their initial rejection for line driver jobs under the company's "no-transfer" policy and the subsequent discriminatory effect that this allegedly had on their seniority. Under the "no-transfer" plan, a city driver was forced to resign, and therefore lose seniority, in order to secure the more lucrative line-driver jobs. The plaintiffs in that case did not have the action certified as a class action. On the individual action, the plaintiffs clearly did not shoulder their burden of proof. The District Court dismissed, for the primary reason that a large majority of the union had only recently rejected a merger

of the seniority lists of the two groups of drivers, and that the plaintiffs lacked the necessary qualifications for the line-driver jobs. The Court of Appeals also rejected the plaintiffs' individual claims, but on its own motion recognized the plaintiffs as representatives in a class action. The Supreme Court reversed the Court of Appeals, stating that Rule 23 requisites had not been complied with. But of even more significance is the fact that the Court did not see fit to consider whether there was discrimination present or not. As in the present case, the courts in both the individual and class actions ruled against the plaintiff. But the Supreme Court then remanded the case on the class action issue. In so doing the Court made it clear that the plaintiffs could not, on their own, without proof of individual or class discrimination, force liability on the defendants. The pertinent language is as follows:

> "The District Court found upon abundant evidence that these plaintiffs lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore simply not eligible to represent a class of persons who did allegedly suffer injury. Furthermore, each named plaintiff stipulated that he had not been discriminated against with respect to the initial hire. In light of that stipulation they are hardly in a position to mount a classwide attack on the no-transfer rule and seniority system . . ." 97 S.Ct. at page 1897.

Factually the present case is very similar. The plaintiff in the case before us was found by both this Court and the Court of Appeals to have no claim either individually or as a class representative, yet liability was imposed upon the defendants. To follow the mandate of the Court of Appeals, and to order a merger of the two unions in this case would impose liability upon the defendants in a situation analogous to that found in *East Texas Motor Freight,* and this, we believe, would be contrary to the Supreme Court's ruling in that case. In the present case, it was determined by both this

Court and the Court of Appeals that the plaintiff had suffered no racial discrimination at the hands of any of the defendants, and it was likewise determined by both Courts that no member of the alleged class had been discriminated against by these defendants. Both Courts concluded that the plaintiff was not the representative of a class, and thus, as in the *East Texas Motor Freight* case, he is hardly "in a position to mount a class-wide attack on . . ." the defendants in this case. Thus, this Court concludes that under the law enunciated in *East Texas Motor Freight,* the defendants simply cannot win, as they did in both Courts here, and still be cast in judgment.

This Court concludes, therefore, that in light of the jurisprudence as it has developed since the issuance of the mandate in this case, it is compelled, pursuant to Rule 60 of the Federal Rules of Civil Procedure, to deviate from the mandate of the Court of Appeals without leave of Court. It further concludes that in light of the most recent case law from the Supreme Court, it would be illegal and unjust to compel the merger of the two unions under the circumstances of this case. Therefore, the mandate of the Court of Appeals in this case is modified and the plaintiff's suit is dismissed. Judgment has been entered herein accordingly.